## CLAUDE M. WEDDINGTON v. CAREY C. BOSHAMER.

(Filed 15 April, 1953.)

**1. Sales § 11: Payment § 2—**

Where the purchaser gives the seller a check for the agreed purchase price of property acquired by the purchaser at a bankruptcy sale, and the sole condition of the sale is the confirmation of defendant's bid at the bankruptcy sale, the sale is intended as a cash sale, and if the check is not paid by the bank, or its invalidity is otherwise established, no title to the property passes to the purchaser.

2. Same—

> Plaintiff admitted that at the time he issued his check in payment of a cash sale he did not have sufficient funds in the bank to cover it, and did not deposit sufficient funds until two days later. In the meantime, defendant ascertained that the check was "no good." *Held:* Defendant was entitled to elect to rescind the sale and so inform plaintiff and return his check.

APPEAL by plaintiff from *Nettles, J.,* January Term, 1953, of CABARRUS.

This is an action to recover damages for alleged breach of contract.

The plaintiff and the defendant attended a bankruptcy sale in Charlotte, N. C., on 24 April, 1952. The defendant was high bidder at the sale on four Edmos knitting machines at a price of $1,625. It was announced at the sale that anyone could go to the courthouse that afternoon and ascertain whether his bid was confirmed or rejected. Before the sale was completed, the plaintiff inquired of the defendant as to what he would take for the four machines he had purchased. The plaintiff had placed several bids on these machines at the sale. The defendant informed him he would take $2,000, whereupon the plaintiff said he would take them. After the bankruptcy sale, the plaintiff inquired of the defendant if he wanted a check. The defendant stated that he did and plaintiff gave him a check for $2,000 on his personal account in a Concord bank. The sale of the machines to the defendant was duly confirmed by the court in the afternoon of the day the bankruptcy sale was conducted.

On Saturday afternoon following the sale on Thursday, the plaintiff contacted the defendant by telephone relative to arranging delivery of the machines. The plaintiff was informed by the defendant that plaintiff's check was "no good"; that the defendant had already sold the machines and that the plaintiff could not have them.

The plaintiff testified, "On Monday I received a letter signed by Carey C. Boshamer dated April 26, 1952 enclosing the check. On Monday morning I got $2,000 in cash and went down to his office and told him I had brought the money down there for the machines. He said there was nothing they could do about it, that he had already sold to somebody else, . . . I knew at the time I gave the check I did not have the funds in the Cabarrus Bank to cover it. . . . I did not tell Boshamer that at the time. On Friday I did not have funds in the bank to cover the check. I called Mr. Boshamer Saturday and he told me the check was no good, that he had sold to somebody else and the sale was off. I deposited the money Saturday morning. . . . When I gave Boshamer the check I considered I had bought the machines except for the court approving the same.

That was the only stipulation he made when I bought them. It was a deal so far as I was concerned."

The plaintiff seeks to recover $5,500 in damages alleging that at the time he purchased the machines they were worth $7,500.

At the close of plaintiff's evidence the defendant moved for judgment as of nonsuit. The motion was allowed and the plaintiff appeals, assigning error.

*M. B. Sherrin and John Hugh Williams for plaintiff, appellant.*
*Mullen, Holland & Cooke and Verne E. Shive for defendant, appellee.*

DENNY, J.  We think it is clear from the evidence adduced in the trial below that the agreement between the plaintiff and the defendant for the purchase and sale of the knitting machines in question was intended to constitute a cash transaction, subject only to the confirmation of the defendant's bid at the bankruptcy sale. Plaintiff's own testimony supports this view, and when the defendant ascertained that the plaintiff's check given in payment for these machines was worthless, he had the right to rescind the sale.

It is the settled law in this jurisdiction that where personal property is sold for a cash consideration and the buyer gives a check for the purchase price, the check, in the absence of an agreement to the contrary (*Dewey v. Margolis,* 195 N.C. 307, 142 S.E. 22), does not constitute payment until it has been paid by the drawee bank. "A worthless check is not a payment." *Hayworth v. Insurance Co.,* 190 N.C. 757, 130 S.E. 612. In such cases, as between the parties, the transfer of title is conditioned upon the payment of the check by the bank on which it is drawn; and if the check is dishonored by the bank and not paid, or its invalidity is otherwise established, no title to the property passes to the purchaser. *Motor Co. v. Wood, ante,* 318, 75 S.E. 2d 312; *Parker v. Trust Co.,* 229 N.C. 527, 50 S.E. 2d 304, and cases cited; 46 Am. Jur., Sales, section 447, page 613. See also *Davidson v. Furniture Co.,* 176 N.C. 569, 97 S.E. 480.

In this case, the plaintiff admits that at the time he issued the check in question, he did not have sufficient funds in the bank on which it was drawn to cover it, nor did he deposit sufficient funds to do so until two days later. In the meantime the defendant ascertained that the check was "no good," elected to rescind the sale and so informed the plaintiff and returned his check.

The ruling of the court below will be upheld, and the judgment is
Affirmed.