COURT OF APPEALS OF VIRGINIA

Present: Judges Elder, Kelsey and Alston
Argued at Richmond, Virginia


SUSAN A. WILSON, A/K/A
  SUSAN A. JONES
                                             MEMORANDUM OPINION* BY
v.    Record No. 0550-11-2                   JUDGE D. ARTHUR KELSEY
                                             FEBRUARY 14, 2012
COMMONWEALTH OF VIRGINIA

              FROM THE CIRCUIT COURT OF PRINCE EDWARD COUNTY
                            Thomas V. Warren, Judge

             Joseph A. Sanzone (Sanzone & Baker, P.C., on brief), for appellant.

             (Kenneth T. Cuccinelli, II, Attorney General; Rosemary V. Bourne,
             Assistant Attorney General, on brief), for appellee.


       A jury found Susan A. Wilson guilty of two counts of unlawfully obtaining documents

from the Department of Motor Vehicles (DMV) in violation of Code § 46.2-105.2(A) and one

count of grand larceny in violation of Code § 18.2-95. On appeal, Wilson argues the evidence

was insufficient to prove her guilt. We disagree and affirm.


                                             I.

       On appeal, we review the evidence in the "light most favorable" to the Commonwealth.

Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003). This principle

requires us to "discard the evidence of the accused in conflict with that of the Commonwealth,

and regard as true all the credible evidence favorable to the Commonwealth and all fair

inferences to be drawn therefrom." Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755,

759 (1980) (emphasis and citation omitted).

       * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Our review of the facts "is not limited to the evidence mentioned by a party in trial argument or by the trial court in its ruling." Perry v. Commonwealth, 280 Va. 572, 580, 701 S.E.2d 431, 436 (2010) (quoting Bolden v. Commonwealth, 275 Va. 144, 147, 654 S.E.2d 584, 586 (2008)). Instead, "an appellate court must consider all the evidence admitted at trial that is contained in the record." Id. (quoting Bolden, 275 Va. at 147, 654 S.E.2d at 586); see also Hamilton v. Commonwealth, 279 Va. 94, 103, 688 S.E.2d 168, 173 (2010).

From this perspective, the evidence at trial showed Wilson and her former husband, Carl Jones, divorced in January 2007. The final divorce decree incorporated a property settlement agreement, along with an addendum, allocating ownership rights to marital property. One provision of the agreement transferred "the parties' boats, trailers and equipment" to Jones, giving him "sole use, possession, and enjoyment of said items as of the date of the execution of this agreement . . . ." App. at 138. After the divorce, Jones exclusively possessed the boats and trailers, keeping them in the yard of his residence.

Around July 23, 2009, Wilson signed the title to one of the boats "as seller" and delivered the title to the secretary of Jones's legal counsel. Id. at 44, 165. At that time, Wilson did not assert any claim of ownership in the boat. After receiving the boat title, however, Jones's counsel never filed it with the Virginia Department of Game and Inland Fisheries (DGIF).

Jones died on September 19, 2009. Less than two weeks later, on October 2, Wilson visited a DGIF office and represented she had "lost" the boat title and needed a replacement. Id. at 21-22, 160. In her application for the boat title, Wilson certified "under penalty of perjury" that she and her *new* husband owned the boat and that "all other matters stated herein are true and correct ([a]s required by § 29.1-702.1 – Code of Virginia)." Id. at 159. Based upon these representations, DGIF issued a replacement boat title identifying Wilson and her new husband as joint owners.

Wilson then went to a DMV office with the same story about the boat trailer title. She claimed it, too, had been "lost" and she needed to secure a replacement title. Id. at 65-66. In her application, Wilson identified herself and Jones as co-owners with right of survivorship. Wilson provided her "Owner's Signature" certifying all the facts in the application were "true and valid." Id. at 152. Based upon this application, the DMV issued Wilson a replacement document of title on October 28.

A few weeks later, on November 17, Wilson appeared at the DMV office with Jones's death certificate and applied for a new document of title for the trailer listing herself as the sole owner. Signing again as owner, Wilson certified the veracity of her claim. See id. at 155. Based on Wilson's representations, DMV removed Jones's name and issued the new document of title to Wilson.

On November 22, Wilson took the boat and trailer from Jones's former residence. The value of each exceeded $200. See App. at 58, 117 (stipulation at trial); Oral Argument Audio 2:35-43 (acknowledging trial stipulation). A grand jury indicted Wilson for unlawfully obtaining documents of title from DMV and for grand larceny of the boat and trailer.

At trial, Wilson claimed she had every right to apply for replacement titles and to take possession of the boat and trailer. She alleged Jones still owed her $50,000 under the addendum to the property settlement agreement. Taking his boat and trailer (along with securing documents of title for both), Wilson argued, was simply a reasonable self-help remedy.

Despite Wilson's allegations, her counsel expressly disavowed any assertion of a claim-of-right defense and declined to offer an instruction on the issue. Id. at 119, 121.[1] Counsel

---

[1] At the close of Commonwealth's evidence, Wilson's counsel appeared to raise a "claim of right" defense in the context of a motion to strike. App. at 73. He did not, however, assert this argument during his motion to strike at the close of all of the evidence. Id. at 118-19; see

instead made a claim of "ownership," arguing Wilson was the "title owner" pursuant to DMV records. Id. at 118. On this ground, Wilson's counsel contended the charges should be dismissed given the absence of any evidence that "somehow or another the DMV record was altered." Id. After the trial court denied Wilson's motion to strike, the jury found Wilson guilty of all charges and imposed a $2,500 fine for each violation.

II.

On appeal, Wilson claims the jury erred in finding her guilty of two counts of unlawfully obtaining documents from DMV in violation of Code § 46.2-105.2(A) and one count of grand larceny in violation of Code § 18.2-95. Though her argument has several layers, it rests on the general premise that she co-owned the boat and trailer, and thus, did nothing wrong in obtaining the title documents and retrieving the boat and trailer after Jones's death. We disagree with the legal framework on which Wilson builds her argument, as well as her challenge to the rationality of the jury's factfinding.

A.   STANDARD OF APPELLATE REVIEW

"An appellate court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Williams v. Commonwealth, 278 Va. 190, 193, 677 S.E.2d 280, 282 (2009) (emphasis in original) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)); see also Cavazos v. Smith, 132 S. Ct. 2, 3 (2011) (reaffirming Jackson standard). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential

generally McDowell v. Commonwealth, 282 Va. 341, 342, 718 S.E.2d 772, 774 (2011) (holding "in a bench trial, at the very least, [the litigant] must reassert the issues raised in his original motion to strike in his closing argument in order to preserve the issues for appeal" (citing Murillo-Rodriguez v. Commonwealth, 279 Va. 64, 75 n.4, 83-84, 688 S.E.2d 199, 205 n.4, 210 (2010))). At the close of the evidence, Wilson's counsel disclaimed any reliance on the claim-of-right theory. See App. at 119.

elements of the crime beyond a reasonable doubt.'" Williams, 278 Va. at 193, 677 S.E.2d at 282 (citation omitted and emphasis in original). When a jury has rendered its verdict, "it is not for this court to say that the evidence does or does not establish his guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion." Cobb v. Commonwealth, 152 Va. 941, 953, 146 S.E. 270, 274 (1929). Suffice it to say, an "appellate court is no substitute for a jury." Id.

## B. UNLAWFULLY OBTAINING DMV TRAILER DOCUMENTS

Wilson challenges her conviction for unlawfully obtaining documents from the DMV in violation of Code § 46.2-105.2(A). She argues she could not have violated the statute because, as a matter of law, she could lawfully claim ownership until and unless Jones went to the DMV and obtained a title solely in his name.[2] We disagree.

Among other things, Code § 46.2-105.2(A) makes it "unlawful for any person to obtain a . . . certificate of title, or other document issued by the Department if such person . . . *is otherwise not legally entitled thereto . . . .*" Code § 46.2-105.2(A) (emphasis added). To be "legally entitled," id., to a DMV document of title, the applicant must have a legally enforceable interest in the property.

In this case, Wilson voluntarily relinquished "any and all interest," App. at 138, to the boat and trailer by entering into the property settlement agreement and addendum, which were

---

[2] On appeal, Wilson also argues the absence of any transfer endorsement by her on the trailer document of title (with delivery of it to Jones) invalidates her convictions under Code § 46.2-105.2(A). The Commonwealth, however, points out Wilson never made this argument in the trial court and thus cannot raise it for the first time on appeal. We agree. Under settled principles, the "same argument must have been raised, with specificity, at trial before it can be considered on appeal." Correll v. Commonwealth, 42 Va. App. 311, 324, 591 S.E.2d 712, 719 (2004). "Making one specific argument on an issue does not preserve a separate legal point on the same issue for review." Edwards v. Commonwealth, 41 Va. App. 752, 760, 589 S.E.2d 444, 448 (2003) (*en banc*), aff'd by unpublished order, No. 040019 (Va. Oct. 15, 2004).

incorporated by reference into the 2007 final divorce decree.  See Shenk v. Shenk, 39 Va. App. 161, 174, 571 S.E.2d 896, 903 (2002) (noting similar language used in an agreement transferred "'all' of [husband's] rights," to wife, not solely "bare legal title").  The agreement vested Jones with "sole use, possession, and enjoyment" of the boat and trailer "as of the date of the execution of this agreement . . . ."  App. at 138.  No later amendment changed this provision of the agreement.  No later court order amended the final decree incorporating the agreement.  Neither the agreement nor the decree (vis-à-vis Wilson) conditioned the vesting in Jones of sole ownership of the trailer upon his later retitling it with DMV.  At no point after the agreement and decree, therefore, was Wilson "legally entitled" under Code § 46.2-105.2(A) to claim on two DMV title applications to be either the sole owner or co-owner of the boat trailer.

A valid property settlement agreement, incorporated by a divorce decree, binds the parties to the allocation of marital property specifically addressed in the agreement.  See Campbell v. Campbell, 32 Va. App. 351, 355-56, 528 S.E.2d 145, 147 (2000).  By the terms of an agreement, parties may relinquish or waive claims to property interests of their respective spouse, Southerland v. Southerland, 249 Va. 584, 589, 457 S.E.2d 375, 378 (1995), as "[e]very person . . . is entitled to dispose of [his] property, in such manner and upon such terms as he chooses," Galloway v. Galloway, 47 Va. App. 83, 92, 622 S.E.2d 267, 272 (2005) (quoting Smyth Bros. v. Beresford, 128 Va. 137, 170, 104 S.E. 371, 382 (1920)).

Notwithstanding the property settlement agreement and the divorce decree, Wilson contends Jones had a legal obligation pursuant to the "mandatory provisions" of Code § 46.2-633(A) to secure a new document of title in his own name.[3]  Because he failed to do so

---

[3] Given our holding, we need not decide whether Code § 46.2-633(A) applies to title transfers required by property settlement agreements incorporated into divorce decrees.

before his death, Wilson reasons, she was free to seek a retitling of the trailer solely in her name. Again, we disagree.

The DMV title recordation statutes serve to protect third parties (like *bona fide* purchasers and lien holders) from unrecorded transfers of title. The statutes "afford a simple method of recording such lien on the title certificate of the vehicle through a central agency," General Credit, Inc. v. Winchester, Inc., 196 Va. 711, 717, 85 S.E.2d 201, 204 (1955), and designate a single place where a potential "creditor or purchaser" can find information about the status of motor vehicles, Maryland Credit Fin. Corp. v. Franklin Credit Fin. Corp., 164 Va. 579, 583, 180 S.E. 408, 409-10 (1935).

The absence of recordation has no effect on the legal rights and liabilities solely between *the original parties to the sale.* See Staunton Indus. Loan Corp. v. Wilson, 190 F.2d 706, 708 (4th Cir. 1951) (explaining the recordation statutes were "not intended to invalidate unrecorded transactions in motor vehicles" between immediate parties (citation omitted)); accord Travelers Indem. Co. v. Nationwide Mut. Ins. Co., 227 F. Supp. 958, 963-64 (W.D. Va 1964) (because Virginia's motor vehicle titling statutes serve a "recording or notice function," compliance with the transfer of title between parties relaxes when "no third persons are involved").

C. GRAND LARCENY OF THE BOAT AND TRAILER

Wilson also argues on appeal the evidence was insufficient to prove she stole either the boat or the trailer. Alleging she was the "titled owner" of both, Wilson contends it was "impossible for her to steal from herself." Appellant's Br. at 10. Because the evidence clearly refutes this assertion with respect to the boat, we need not address the boat trailer.[4]

---

[4] The grand larceny indictment against Wilson alleged generally she stole "property" having a value of $200 or more. App. at 3. The jury instructions directed the jury to find her guilty if she stole the boat "and/or" the trailer. Trial Tr. at 196; R. at 180. The jury's general

"In Virginia, larceny is a common law crime." McEachern v. Commonwealth, 52 Va. App. 679, 684, 667 S.E.2d 343, 345 (2008) (citation omitted). Larcenous intent "may, and often must, be inferred from that person's conduct and statements." Id. (citations omitted). "To be sure, 'there is not one case in a hundred where the felonious intent in the original taking can be proved by direct evidence. From the nature of the case, intent, generally, must be inferred from circumstances.'" Id. (quoting Skeeter v. Commonwealth, 217 Va. 722, 726, 232 S.E.2d 756, 759 (1977)). Absent countervailing evidence of an intention otherwise, "the wrongful taking of the property in itself imports the *animus furandi*." Id. at 685, 667 S.E.2d at 346 (citation omitted). "In other words, the very existence of a trespassory taking permits the inference (unless other circumstances negate it) that the taker intended to steal the property." Id. (citation omitted).

Having established that Wilson had *no* ownership interest, the evidence amply supports the conclusion that she committed grand larceny of the boat. The property settlement agreement and divorce decree vested Jones with "sole use, possession, and enjoyment of said items as of the date of the execution of this agreement . . . ." App. at 138. Wilson later executed, as "seller," a document of title to the boat and delivered it to the secretary of Jones's legal counsel. Id. at 44, 165. She did not assert at that time any claim of ownership in the boat. Jones maintained possession of the boat until his death.

These facts negate Wilson's alleged ownership interest in the boat. See generally Allstate Ins. Co. v. Atlanta Cas. Co., 260 Va. 148, 154-55, 530 S.E.2d 161, 165 (2000); Nationwide Ins. Co. v. Storm, 200 Va. 526, 528-29, 106 S.E.2d 588, 589-90 (1959). Wilson's successful attempt,

---

verdict did not distinguish between the two. Because Wilson stipulated the value of either exceeded $200, see *supra* n.1, we will limit our analysis to the sufficiency of the evidence regarding the larceny of the boat.

just weeks after Jones's death, to manipulate DGIF into issuing a new title to her and her new husband (claiming the original document was lost) only strengthens the incriminating evidence of her larcenous intent. For these reasons, the jury had ample evidence to convict Wilson of grand larceny.

On appeal, Wilson raises a claim-of-right defense contending she reasonably believed she could take the boat in response to Jones's alleged failure to make a payment under the property settlement agreement. See generally Groves v. Commonwealth, 50 Va. App. 57, 63, 646 S.E.2d 28, 31 (2007) (recognizing that a sincere "good faith" claim of right, but not a "dishonest pretense," could permit the factfinder to conclude larcenous intent did not exist). We will not address this defense, however, because Wilson expressly abandoned it in the trial court. See App. at 119, 121; *supra* at 3-4 n.1. "Under settled principles, a criminal defendant cannot 'approbate and reprobate by taking successive positions in the course of litigation that are either inconsistent with each other or mutually contradictory.'" Alford v. Commonwealth, 56 Va. App. 706, 709, 696 S.E.2d 266, 267 (2010) (citation omitted).

### III.

Because sufficient evidence supports Wilson's convictions for unlawfully obtaining documents from DMV and grand larceny, we affirm.

Affirmed.